IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TERRI ALLFREY, Individually and as        :
Administratrix of the Estate of           :
Mary Ann Miller, Deceased                 :
41 S. Harrison St.                        :
Beverly Hills, FL 34465                   :
                                          :
            Plaintiff                     :
                                          :
        vs.                               :        CIVIL ACTION - - LAW
                                          :
GGNSC EAST STROUDSBURG LP,                :
Directly and/or t/d/b/a                   :
GOLDEN LIVING CENTER --                   :
STROUD;                                   :
221 East Brown Street                     :
East Stroudsburg, PA 18301                :        MEDICAL PROFESSIONAL LIABILITY
                                          :
c/o Corporation Service Company           :
2595 Interstate Drive – Suite 103         :
Harrisburg, PA 17110                      :
                                          :        JURY TRIAL DEMANDED
        and                               :
                                          :
GGNSC EAST STROUDSBURG GP                 :
LLC ;                                     :
221 East Brown Street                     :
East Stroudsburg, PA 18301                :
                                          :
c/o Corporation Service Company           :
2595 Interstate Drive – Suite 103         :
Harrisburg, PA 17110                      :
                                          :
        and                               :
                                          :
GOLDEN GATE NATIONAL SENIOR               :
CARE LLC;                                 :
c/o Corporation Service Company           :
2595 Interstate Drive – Suite 103         :
Harrisburg, PA 17110                      :
                                          :
        and                               :
                                          :
THE MEADOWS AT STROUD FOR                 :
NURSING AND REHABILITATION LLC            :
*(Formerly Known As "Golden Living*       :

*Center–Stroud")*                              :
221 East Brown Street                          :
East Stroudsburg, PA 18301                     :
                                               :
c/o VCorp Services, LLC                        :
7708 Langdon Street                            :
Philadelphia, PA 19111                         :
                                               :
          *and*                                :
                                               :
PRIORITY HEALTHCARE GROUP LLC :
221 East Brown Street                          :
East Stroudsburg, PA 18301                     :
                                               :
c/o Cogency Global, Inc.                       :
600 North Second Street                        :
Harrisburg, PA 17101                           :
                                               :
                        Defendants  :
                                               :
                                               :   NO. _____   of   2017

## **COMPLAINT**

AND NOW, the Plaintiff, Terri Allfrey, individually and as Administratrix of the

Estate of Mary Ann Miller, by and through her counsel, Kevin P. Foley, Esquire, of the

Foley Law Firm, who hereby files this Complaint against the Defendants, and

respectfully avers as follows:

## **Jurisdiction**

Jurisdiction for this matter is properly the United States District Court for the

Middle District of Pennsylvania in that:

(a)   The parties are citizens of different states, in that the Plaintiff is a

citizen of the State of Florida and the Defendant is a skilled nursing facility

in the Commonwealth of Pennsylvania, pursuant to 28 U.S.C.A. §1332(b);

and,

(b)   The amount in controversy exceeds $75,000.00.

**Parties**

1.      Plaintiff, Terri Allfrey, is an adult citizen of the State of Florida and is the

Administratrix of the Estate of Mary Ann Miller, Deceased ("Miller") who died on

February 12, 2016.  (A copy of the Certificate of Grant of Letters of Administration is

attached hereto as Exhibit "A" and incorporated by reference).

2.      The names and addresses of all persons likely to recover damages for the death

of Mary Ann Miller and relation to her are:

| Name | Address | Relationship |
|---|---|---|
| Terri Allfrey | 41 S. Harrison St., Beverly Hills, FL 34465 | Daughter |
| Jeffrey Miller | 172 Hummingbird Trail Bushkill, PA 18324 | Son |
| Michael Miller | 172 Hummingbird Trail Bushkill, PA 18324 | Son |

3.      Defendant GGNSC East Stroudsburg LP, directly and/or t/d/b/a Golden Living

Center – Stroud, ["Golden Living - Stroud"], is, upon information and belief, a Delaware

corporation and duly licensed nursing home facility and, at all times relevant hereto

owned, operated, possessed, maintained, and/or otherwise controlled a nursing home

facility known as Golden Living Center – Stroud,[1] which was and is located at 221 East

Brown Street, East Stroudsburg, Pennsylvania, 18301.  Said Defendant maintains an

address for service registered with the Pennsylvania Secretary of State – Corporation

Bureau of c/o Corporation Service Company, 2595 Interstate Drive, Suite 103,

Harrisburg, Pennsylvania, 17110.

---

[1] Upon information and belief, Plaintiff avers that at some time in 2016, the precise date of acquisition being unknown to the Plaintiff,  *"Golden Living Center – Stroud"* was acquired by Priority Healthcare Group, LLC and the name of the facility was changed to *"The Meadows at Stroud for Nursing and Rehabilitation, LLC."*

4.     Defendant GGNSC East Stroudsburg GP LLC, ["GGNSC GP"], is, upon information and belief, a Delaware corporation and duly licensed nursing home facility and, at all times relevant hereto owned, operated, possessed, maintained, and/or otherwise controlled a nursing home facility known as Golden Living Center – Stroud, which was and is located at 221 East Brown Street, East Stroudsburg, Pennsylvania, 18301.  Said Defendant maintains an address for service registered with the Pennsylvania Secretary of State – Corporation Bureau of c/o Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, Pennsylvania, 17110.

5.     Defendant Golden Gate National Senior Care LLC, ["Golden Gate"], is, upon information and belief, a Delaware corporation and duly licensed nursing home facility and, at all times relevant hereto owned, operated, possessed, maintained, and/or otherwise controlled a nursing home facility known as Golden Living Center – Stroud, which was and is located at 221 East Brown Street, East Stroudsburg, Pennsylvania, 18301.  Said Defendant maintains an address for service registered with the Pennsylvania Secretary of State – Corporation Bureau of c/o Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, Pennsylvania, 17110.

6.     Defendants identified in paragraphs three through five, that is, Golden Living – Stroud, GGNSC GP, and Golden Gate, shall hereinafter be referred to collectively as the "Golden Living" defendants, except where otherwise noted.

7.     Defendant The Meadows at Stroud for Nursing and Rehabilitation LLC, ["Meadows"], formerly known as "Golden Living Center – Stroud," is, upon information and belief, a business entity and duly licensed nursing home facility and, at all times relevant hereto owned, operated, possessed, maintained, and/or otherwise controlled a nursing home facility known as The Meadows at Stroud, which was and is located at

221 East Brown Street, East Stroudsburg, Pennsylvania, 18301.  Said Defendant

maintains an address for service registered with the Pennsylvania Secretary of State –

Corporation Bureau of c/o VCorp Services, LLC, 7708 Langdon Street, Philadelphia,

Pennsylvania, 19111.

8.      Defendant Priority Healthcare Group, ["PHG"], is, upon information and belief, a

Delaware corporation and duly licensed nursing home facility and, at all times relevant

hereto owned, operated, possessed, maintained, and/or otherwise controlled a nursing

home facility known as The Meadows at Stroud, formerly known as "Golden Living

Center – Stroud," which was and is located at 221 East Brown Street, East Stroudsburg,

Pennsylvania, 18301.  Said Defendant maintains an address for service registered with

the Pennsylvania Secretary of State – Corporation Bureau of c/o Cogency Global, Inc.,

600 North Second Street, Harrisburg, Pennsylvania, 17101.

9.      The Defendants identified in paragraphs seven and eight, that is, Meadows and

PHG, shall hereinafter be referred to collectively as the "Meadows" defendants, except

where otherwise indicated.

10.     The Golden Living and/or Meadows Defendants, and/or each of them, at all times

relevant herein, acting alone and/or by and through their servants, employees, agents,

and/or ostensible agents, were responsible for, among other things, the medical,

hygienic, social, and psychological care, treatment, monitoring, diagnosis, referral, well-

being and/or safety of their residents, including Plaintiff's Decedent.

11.      At all times relevant hereto the Golden Living and/or Meadows Defendants,

and/or each them, by and through their agents, servants, and employees, provided and

controlled all resident care services of the elderly and infirmed residents at Golden

Living Center – Stroud, and/or its successor, The Meadows at Stroud,  including, but not

limited to, the diagnosis, care and treatment of the residents' medical, custodial and psycho-social needs; providing adequate nursing supplies and durable medical equipment; accident investigation and prevention; communications with attending physicians; determination and drafting of policies and procedures; hiring, firing, training and supervision of employees; incident reporting and financial expenditures at Golden Living Center – Stroud and/or its successor, The Meadows at Stroud,  undertaken as part of their operations.

12.     At this juncture, prior to discovery, while Defendants, and/or each of them, clearly know the identities of the persons acting on their behalf, Plaintiff is unaware of the specific identities of those persons who acted or failed to act, as Defendants' agents, as the resident chart in most instances only identifies caregivers via illegible and handwritten signatures and, furthermore, prior to discovery, Plaintiff lacks access to information that would identify the Defendants' management and supervisory personnel.

13.     Accordingly, Plaintiff cannot specifically identify by name the agents or persons referred to hereto or hereinafter, and are able only to describe, prior to discovery, what actions each of them performed or failed to perform.

14.     The Golden Living and/or Meadows defendants, and/or each of them, are directly and/or vicariously liable under the circumstances for the conduct of their employees, servants, agents, ostensible agents, apparent agents, and/or representatives, including physician(s), who are negligent in any manner described in the foregoing or subsequent paragraphs since they had control of and/or the right to control their conduct and/or the manner in which they performed or failed to perform their duties and/or as a matter of law.

15.     This is a claim for Medical Professional Liability brought against Defendants, and/or each of them.

16.     As a direct and proximate result of the careless and negligent conduct, and the actions and/or failure to act on the part of the Golden Living and/or Meadows Defendants, as described in the preceding and subsequent paragraphs, Plaintiff, as Administratrix of the Estate of Mary Ann Miller, Deceased, is entitled to recover all damages on behalf of the Estate of Mary Ann Miller which are recoverable under the Wrongful Death Statute, 42 Pa C.S.A. §8301, including, but not limited to:

a.   reasonable, ordinary and necessary medical expenses;

b.   funeral, burial, and estate administration expenses necessitated by reason of injuries causing death; and,

c.   as previously indicated, any and all other damages allowable under the Wrongful Death Statute and case law of the Commonwealth of Pennsylvania interpreting the same.

17.     As a direct and proximate result of the negligent conduct and failures to act on the part of Defendants as described in the foregoing and subsequent paragraphs, Plaintiff, as Administratrix of the Estate of Mary Ann Miller, Deceased, is entitled to recover all damages on behalf of the Estate of Mary Ann Miller which are recoverable under the Survival Act, 42 Pa C.S.A. § 8302, including, but not limited to:

a.   loss of income, wages, retirement, social security income and other financial losses Decedent would have accumulated during her lifetime expectancy;

b.   as previously indicated, any and all other damages allowable under the Survival Act case law of the Commonwealth of Pennsylvania, interpreting the same, including pain and suffering of the Decedent prior to her death.

**FACTS REGARDING THE CARE OF MARY ANN MILLER**

18.     Mary Ann Miller was born on April 29, 1936.

19.     Miller was admitted to Golden Living Center- Stroud on November 28, 2015 from

Pocono Medical Center for rehabilitation following a fall and subsequent left hip fracture

on November 22, 2015.  Her physical function was assessed as dependent for transfer,

toileting, locomotion, grooming and bathing, with an unsteady gait.  Her bladder and

bowel were both listed as incontinent with high pressure-sore risk.  Body Assessment:

Stage I-II Decubitus.  (See Exhibit "B" which is attached hereto and incorporated by

reference).

20.     Miller was a patient under the care of the Defendants and/or each of them, that

is, at the Golden Living Center – Stroud and/or The Meadows at Stroud, from November

28, 2015 up until January 13, 2016, when she was transferred to Pocono Medical

Center where she died on February 12, 2016.

21.     On December 4, 2015, nursing notes indicate a "Stage 2 sacral, T2, T3 lytic

lesion of spine – suspected malignancy."

22.     Throughout her stay at Golden Living Center – Stroud and/or The Meadows at

Stroud, Miller complained of pain in her left hip/rear area, which nursing notes indicate

was remedied with Oxycodone.

23.     On January 5, 2016, nursing notes indicate that Miller had developed a left heel

wound as well as a continuation of her sacral wound. No other documentation or

staging was noted.

24.      On January 13, 2016, Miller was admitted to Pocono Medical Center after a

change in mental status, where a "large, tunneling… necrotic Stage 5…" sacral decubiti

was noted.

25.     The failure to adequately treat Miller and prevent both the development of

bedsores, and progression from bedsores to open wounds, was a continuous course of

conduct over the period of November 28, 2015 to January 13, 2016 that are too numerous to individually describe but which are contained in records supplied by Defendants, authored by Defendants' agents, servants, and employees, describing Miller's condition.

26.    As a result of the foregoing, Miller suffered a diminished quality of life, endured pain, discomfort, added disability, worsened ambulatory dysfunction, and diminishment of her abilities to perform activities of daily living, humiliation, and loss of life's pleasures.

27.    Because of her resulting injuries and surgery, Plaintiff's Decedent, Mary Ann Miller, never recovered.

28.    On February 12, 2016, Mary Ann Miller died.

29.    On February 13, 2016, an autopsy was performed at Lehigh Valley Hospital by S. Land, M.D, assisted by Donald Riley.

30.    Dr. Land's Final Opinion of the autopsy is as follows:

> "After review of the clinical history and a complete autopsy, it is determined that the cause of death of this 79-year-old white female is atherosclerotic cardiovascular disease and diabetes mellitus complicated by hip fracture and subsequent immobility and pressure ulcers." (Attached hereto and incorporated by reference as Exhibit "C" is a copy of the autopsy report).

31.    According to medical records from Golden Living Center – Stroud and/or its successor, The Meadows at Stroud, on February 18, 2016, six days after the death of Mary Ann Miller, an entry was made for a "Clinical Physician Order Update Revisions," revising several entries to appear as though Miller was receiving more thorough care:

(1)  Schedule follow up with Oncology  (1-12-16)
(2)  Appointment with Dr. Cohen - January 27, 2016 at 3:30pm  (1-11-16)
(3)  Monitor Intake and outputs  (1-8-16)
(4)  Increase fluid intake to 240ml 3x/daily  (1-8-16)
(5)  Semiliquid calorie diet  (1-8-16)

(6)   2 calorie Supplements 120'cc  (1-8-16)
(7)   Venous Doppler of Left Lower Extremity  (1-8-16)
(8)   Apply Santyl to sacral wound daily  (1-7-16)
(9)   Apply protective heel boot to right foot when in bed  (1-7-16)
(10)  Apply Prevalon boot to left foot when in bed  (1-7-16)
(11)  Check bilateral heels every shift  (1-3-16)
(12)  Encourage to float heels when in bed (1-3-16)
(13)  Apply skin prep to left heel pressure ulcer 2x/daily  (1-3-16)
(14)  Aspirin 81mg daily  (1-3-16)

32.     A claim is therefore made on behalf of Miller's physical, emotional, and mental

pain, suffering, loss of life's pleasures, and those costs and expenses of her past

related medical and custodial services which resulted from the avoidable injuries she

sustained at Golden Living Center-- Stroud and/or its successor, The Meadows at

Stroud, and resulting death which, in addition to out of pocket expenses, have been and

will be expended by federal (Medicare), and state (Medicaid) agencies.

## VIOLATION OF APPLICABLE REGULATIONS AND LAWS

33.     At all times relevant hereto, Defendants, and/or each them, operated a skilled

nursing facility, Golden Living Center—Stroud and/or The Meadows at Stroud, pursuant

to a Certificate of Need and License issued by the Commonwealth of Pennsylvania.

34.     As such, Defendants were and are recipients of funding and reimbursements

from the federal government through the Centers for Medicare and Medicaid Services

(CMS) a division of the Department of Health and Human Services.

35.     As recipients of funding from the Medicare and Medicaid program, Defendants

agreed to and undertook the legal duty to operate Golden Living Center—Stroud and/or

The Meadows at Stroud in compliance with applicable federal regulations including, but

not limited to 42 C.F.R. Part 483 (referred to as the "OBRA regulations"), as well as

applicable state regulations, including but not limited to 28 Pennsylvania Regulations

Chapter 201.

36.     Despite the foregoing, during Miller's residence at their facility, that is Golden Living Center-- Stroud and/or The Meadows at Stroud, Defendants allowed continuing operations there to be conducted in violation of multiple portions of federal and state regulations.

37.     Before and during the events recounted herein, Defendants, and/or each of them, reported Quality Measures indicated that substantial numbers of residents at Golden Living Center-- Stroud and/or The Meadows at Stroud experienced deteriorations in the functional capacity, abilities to engage in the activities of daily living, and to maintain their health and psycho-social wellbeing.

38.     It is believed and therefore averred that this was the result of deficiencies in the numbers, training, and skill levels of staff at Golden Living Center – Stroud and/or The Meadows at Stroud.

39.     Defendants, and each of them, were aware of this; however, they failed to correct these circumstances and, as a result, Miller sustained serious injuries at Golden Living Center – Stroud and/or The Meadows at Stroud which caused her to suffer the same sort of deteriorations of her abilities to function and ambulate.

40.     These quality of care deficiencies and the deteriorations suffered by Miller and other facility residents were a direct result of Defendants' decisions to diminish levels and quality of staff for the purpose of harvesting excessive profits from their activities caring for the weak, sick, and the elderly despite the knowledge that harm to the residents, including in this instance to Miller, was inevitable and certain as a result thereof.

## NEGLIGENCE PER SE - VIOLATION OF REGULATIONS

41.     Although the aforesaid federal and state regulations do not impart by the terms

therein a private cause of action for breach thereof, said regulations do constitute a

body of requirements imposed upon skilled nursing and long-term care facilities, as well

as the individuals providing care to residents.

42.     Said regulations were drafted and promulgated, inter alia, for the purpose of:

> a.  Protecting the interests of all persons residing in skilled nursing facilities,
> including Miller; and
>
> b.  Protecting the health, safety, and well-being of all persons residing in
> skilled nursing facilities, including Miller; and
>
> c.  Protecting the health, safety, and well-being of all persons residing in
> skilled nursing facilities, including Miller, from harm caused due to accidental
> injuries, trauma, and the sequelae thereof; and
>
> d.  Protecting the health, safety, and well-being of all persons residing in
> skilled nursing facilities, including Miller, from harm caused due to the neglect
> of their medical, nursing, and custodial needs.

43.     Accordingly, under Pennsylvania law and Section 286 of the Restatement of

Torts 2nd, a violation by Defendants, together with their agents, servants, and/or

employees, of the provisions of said regulations as alleged herein constitutes

negligence *per se*.

44.     The incidents set forth herein constitute multiple violations of Federal Regulations

by the Golden Living Center – Stroud and/or Meadows at Stroud Defendants, and

include breaches of the following regulations:

> a.  42 C.F.R. 483.13 (c) – failing to develop and implement written policies
> and procedures that prohibit resident treatment and neglect and to
> immediately analyze and thereby prevent mistreatment, neglect, and abuse of
> residents by immediately investigating, analyzing and reporting to authorities
> injuries of an unknown origin; and
>
> b.  42 C.F.R. 483.15 (a) - failing to promote care for Miller in a manner that
> maintained her dignity and respect in full recognition of her individuality; and

c.  42 C.F.R. 483.20 - failing to conduct comprehensive and accurate assessments, to have complete and accurate physician orders for her care (subsection a), to assess her following a significant change in physical condition (subsection b), to effect an accurate assessment of her by qualified persons (subsections g & h), to develop and implement a comprehensive care plan in accordance with accepted standards of care (subsection k); and

d.  42 C.F.R. 483.25 - failing to provide Miller the care and treatment necessary to maintain the highest practicable, physical, mental, and psycho-social wellbeing in accordance with a comprehensive assessment and plan of care in her activities of daily living (subsection a), to provide her adequate equipment and supervision to prevent accidental injuries (subsection h), to prevent unnecessary deteriorations in her mental and psychosocial functioning by not treating or attempting to relieve her pain and/or prompt medical attention when needed (subsection f), and failing to prevent urinary tract infections (subsection d), failing to prevent and treat pressure sores and allowing them to develop into open wounds and eventually fungal sepsis (subsection c); and

e.  42 C.F.R. 483.30 - failing to have sufficient numbers of appropriately trained nursing staff to provide related services to allow Miller to maintain or attain the highest practicable physical and mental wellbeing such that there were insufficient staff members available to supervise and care for Miller so as to prevent her from sustaining traumatic injuries from developing pressure sores and open wounds; and

f.  42 C.F.R. 483.75 - failing to comply with applicable federal and state regulations and professional standards and principles that apply to professionals (subsection b.), failing to designate a governing body to adequately and reasonably establish and implement policies regarding the operation of the facility (subsection d.), failing to provide adequate training for and assure the competency of the persons working within the subject facility (subsection e., f., g.& h.), failing to systematically maintain clinical records in accordance with accepted professional standards and practices and to retain resident records as required under applicable regulations (subsection l.), and failing to provide for adequate quality assessment and assurance (subsection o.) as a result of which the management and supervision of Miller allowed and/or did not prevent the deviations from standards of care set forth herein.

45.   The incidents set forth herein constitute multiple violations of Pennsylvania

Regulations including breaches of the following:

a.  Permitting or inflicting abuse upon Miller as it is defined by 28 Pa. Regs. Section 201.3 by virtue of depriving her services and/or medication as aforesaid resulting in protracted pain and suffering;

b.   28 Pa. Regs. Section 201.14(a) – failing to meet the minimum standards for operating a skilled nursing facility as set for the by state agencies and standards pertaining to the health of residents thereof;

c.   28 Pa. Regs. Section 201.18 – failure of the facility and its governing body to adopt and enforce rules relative to the healthcare and safety of residents and the general operation of Golden Living Center-- Stroud (subsection b.) and to ensure that the administrator enforced said rules for the health and safety or residents and provide for staffing and proper completion of said administrator's duties (subsection e.);

d.   28 Pa. Regs. Section 201.20 - failing to provide for required staff development, training, in-service training, and to maintain records thereof;

e.   28 Pa. Regs. Section 201.29- failing to provide for and protect residents' rights as well as their dignity, individuality and privacy;

f.   28 Pa. Regs. Section 211.10(d) – failing to develop and implement care policies designed to protect Miller and facility residents from accidental injury;

g.   28 Pa. Regs. Section 211.11 - failing to implement the plan of care developed for Miller's care and the care of facility residents;

h.   28 Pa. Regs. Section 211.12 - failing to provide nursing services consistent with standards of care, to deploy sufficient numbers of personnel to provide adequate care and with enough time to treat facility residents resulting in Miller developing pressure sores that were allowed to advance to open wounds and fungal infection due to lack of supervision and protective devices all contrary to her plan of care;

i.   49 Pa. Code Section 211.18 – failures of the Registered Nursing staff to safeguard Miller from the incompetent care being provided to her by other healthcare providers and to safeguard her dignity and well being; and,

j.   Such other violations as have been set forth in the Pennsylvania Code which will be determined during the course of discovery.

## NEGLIGENCE PER SE-VIOLATION OF STATUTES

46.    By virtue of the violations of the aforesaid regulations and the actions and/or

inactions as set forth herein, Defendants and/or each of them, directly and/or by their

agents, servants and employees, violated 18 Pa.C.S.A. § 2713 ("Neglect of a Care

Dependent Person") in the care of Miller for intentionally, knowingly, and/or recklessly

causing serious bodily injury to her by failing to provide treatment, care, goods, and services necessary to preserve her health, safety and welfare.

47.    Miller was a care-dependent person and an intended recipient of the protections of this statute and a person of whom Defendants, and their agents, servants, and employees, were responsible to provide care.

48.    Accordingly, under Pennsylvania law, a violation by Defendants, their agents, servants, and employees, of the provisions of said statute as alleged herein constitutes negligence *per se*.

**PENNSYLVANIA DEPARTMENT OF HEALTH DEFICIENCY FINDINGS**

49.    Prior to the events set forth herein, Defendants, and/or each of them, had been determined to be in violation of federal and states regulations and mandates for care on multiple occasions when other deficiencies were determined to exist by the Department of Health.

50.    As a result of deficiency findings, Defendants agreed to specific Plans of Correction which were submitted to the Pennsylvania Department of Health as required per state licensure requirements for a skilled nursing facility. Said Plans of Correction were prepared by and agreed to by Defendants and the Department of Health.

51.    It is believed and therefore averred that, despite each and all of the agreements made by Defendants with the Pennsylvania Department of Health (as set forth in each Plan of Correction), Defendants substantially failed to fully and in good faith comply with the terms thereof.

52.    As a result of continuing, chronic and willful failures to comply with prior plans of correction, Miller was injured.

53.     It is believed and therefore averred that this occurred in significant part because Defendants employed inadequate numbers of staff, failed to properly train its staff, failed to properly supervise its staff, failed to properly care for the facility residents, and failed to provide adequate and proper funding for facility operations due to Defendants' knowing, willful, and deliberate harvesting of unreasonable and undeserved profits from payments made for the care of sick, old, and vulnerable residents of its facility, all with the knowledge of and reckless disregard for the inevitable harm they would suffer.

54.     Had Defendants fulfilled the terms of the prior Plans of Correction, the risks of harm to Miller as a result of inadequate care and the disregard of physician and nursing orders would have been reduced or eliminated.

55.     Defendants, and/or each of them, who owned, operated, controlled, maintained, and profited from the facility operations, as well as their agents, servants, and employees, knew of this series of substantially similar deficiencies and agreed to execute all of the plans of correction.

56.     However, Defendants, and/or each of them, carelessly, recklessly, intentionally, and willfully failed to fulfill the terms of multiple plans of correction despite the fact that it knew or should have known that the failure to do so exposed all the residents, including Miller, to a certain, increased risk of harm.

### DIRECT LIABILITY OF FACILITY DEFENDANTS - PARTICIPANT LIABILITY

57.     At all times relevant hereto and as set forth herein, Defendants, and each of them, operated, administered, controlled, managed, maintained, and in all ways directly participated in the financial, administrative, supervisory, and care-giving activities at Golden Living Center – Stroud and/or The Meadows at Stroud.

58.     More specifically, at all times relevant hereto and as set forth herein, Defendants controlled, regulated, effected, influenced, and directed expenditures, received direct payment for patient care provided at the Golden Living Center – Stroud and/or The Meadows at Stroud facility, allocated financial resources and funding, oversaw the care provided to its residents, promulgated and enforced policies and procedures at Golden Living Center – Stroud and/or The Meadows at Stroud, and in all ways undertook to residents, their families and government regulatory and fiscal entities, the responsibility to provide care to the residents consistent with accepted standards of practice.

59.     As such, Defendants were a direct participant in managing and conducting all of the operations that, as alleged, were specifically related to the averments of negligence herein, the wrongdoing alleged against Defendants, and the violations of federal and state regulations set forth herein.

60.     Accordingly, Defendants are directly liable to Plaintiff for their breaches of duties of care owed to Plaintiff and to Miller as set forth herein under principles of direct liability enunciated in the case of <u>Pryor v. Chambersburg Oil & Gas Co.</u> 103 A.2d 425 (Pa. 1954.) and as applied, for example, to nursing home operations in the case of <u>Canavan v. National Healthcare Corp.,</u> 889 So.2nd 825 (Fla. Ct. App. 2004.)

## DIRECT LIABILITY OF FACILITY DEFENDANTS -
## CORPORATE LIABILITY PER <u>THOMPSON V. NASON</u>

61.     At all times relevant hereto, Defendants, through their administrative, supervisory, nursing, medical, custodial, and corporate representatives, agents, servants, and employees, both within their corporate offices and at the Golden Living Center – Stroud and/or The Meadows at Stroud facility, exercised significant control over Miller's health care insofar as they:

a.  Provided certain diagnostic evaluations and assessments of her evolving and progressing physical health and medical condition via periodic examination, observations, and assessment as required under federal regulations and standards of care; and

b.  Provided services in accordance with portions of periodic plans of care prepared by them for Miller in which certain medical, nursing, rehabilitative, diagnostic, curative, and palliative services were provided; and

c.  Determined her need for and effected the delivery of certain medical interventions including blood tests, reports of changes in condition, monitoring of her nutrition and hydration, treatment for infections, hospitalizations for her medical conditions and the ordering and delivery of prescription drugs, the delivery of nursing, custodial and wound care, and other medical and rehabilitative treatments; and

d.   Agreed to and were responsible for evaluation and diagnosis of the nature and extent of the medical, nursing and custodial services required by her at the Golden Living/Meadows facility; and

e.  Allocated financial resources and entered-into contracts and agreements with third parties providing for the availability and delivery of services to residents of Golden Living Center, including Miller.

62.    As a resident of Defendants' facility, Miller did not have meaningful choices in her health care decisions other than to rely upon that which was provided by Defendants' skilled nursing facility and their agents, servants, and employees.

63.    Accordingly, Defendants, and each of them, at all times relevant hereto, as a healthcare provider under Pennsylvania law and pursuant to Appellate Court holdings in the case of Thompson v. Nason, 527 Pa. 330, 591 A. 2d 703 (Pa. Sup.1991) and its progeny including Scampone v. Grane Health Care, Inc., 11 A.3d 967 (Pa. Super. 2010), owed a legal duty to Plaintiff and Miller to:

a.  use reasonable care in the maintenance of safe and adequate facilities and equipment;

b.  select and retain only competent physicians;

c.   oversee all persons who practice medicine within its walls as to patient care;

    d.  formulate, adopt, and enforce adequate rules and policies to ensure quality care for the patients.

64.    At all times relevant hereto and as set forth herein, Defendants breached the direct and non-delegable duties it owed to Miller to use reasonable care in maintaining safe and adequate facilities and equipment, to select and retain competent physicians, to oversee all persons who provide medical and nursing care within their premises as to patient care, to formulate and enforce adequate rules and policies to ensure quality care for patients, and to provide for adequate numbers of trained staff to provide custodial, nursing, and medical care to facility residents including Miller.

65.    Defendants made decisions in the business and corporate management of Golden Living Center – Stroud and/or The Meadows at Stroud to limit the number of care staff, to hire untrained or undertrained staff, and to limit the staffing expenditures at the facility for purposes of maximizing profit, all of which constitute direct acts of negligence that increased the risk of harm to facility residents including Miller, which harm did ultimately occur.

**VICARIOUS LIABILITY OF FACILITY DEFENDANTS**

66.    At all times relevant hereto, Defendants, by and through their agents, servants, and employees, administered, directed, operated, controlled, monitored, and supervised the daily activities at Golden Living Center – Stroud and/or The Meadows at Stroud and its agents, servants, employees, and staff and therefore had undertaken and assumed the duty to assure their compliance with Federal and State statutes and regulations and standards of care.

67.    At all times relevant hereto, all of the persons providing nursing, administrative, custodial, medical, dietetic, diagnostic, therapeutic, supervisory, and maintenance services to Miller at Golden Living Center – Stroud and/or The Meadows at Stroud were

the agents, ostensible agents, servants, and employees of Defendants who are liable

for any acts or omissions thereof that caused the harm to Miller as set forth herein

although, as aforesaid, the specific identities of such persons are not known and not

knowable to Plaintiff at this juncture prior to discovery.

68.     All of the actions, inactions, negligence, breaches of regulations and standards of

care, and all other activities related to the care provided to Miller while a resident of

Golden Living Center – Stroud and/or The Meadows at Stroud, as well as the

management of said facility as set forth herein, arose within the course and scope of the

employment and/or the agency of persons Defendants had hired, transferred, assigned,

trained, supervised, controlled, and held the power, if necessary, to fire, including but

not limited to the Administrators, Directors of Medicine, Directors of Nursing, and

Governing Body of Golden Living Center – Stroud and/or The Meadows at Stroud.

69.     At all times relevant hereto, Defendants, by their actions and inactions, and in

violation of its duties as owners, operators, and managers of Golden Living Center –

Stroud and/or The Meadows at Stroud, allowed, perpetuated, and caused breaches and

violations of its own policies and procedures as well as standards of care and its duties

and obligations to Miller set forth in federal and state regulations regarding long term

nursing care pursuant to 42 U.S.C. 1396 et. seq. and statutes and regulations

promulgated thereunder in 42 C.F.R. Part 483, 63 P.S. §1101 et seq. and 28 Pa. Code

Chapter 211 as set forth with specificity herein.

70.     Defendants are responsible and legally liable for any and all of the negligent acts

or failures to act by any and all of their agents, servants, and/or employees inasmuch as

each of them acted and were under the supervision and control of Defendants at all

times relevant hereto.

71.    As a result of the foregoing breaches of Defendants' duties, Miller suffered the harm as averred herein.

72.    Plaintiffs therefore claim damages suffered by Miller for her aforesaid pain and suffering, loss of life's pleasures, disfigurement, and other non-economic damages to which she is entitled by reason of Defendants' aforesaid negligence.

73.    Miller also incurred medical, nursing, and other expenses on her own behalf and is responsible for lien repayment to the government and other entities and to the extent she is entitled to reimbursement thereof a claim is made herein.

### SPECIFIC AVERMENTS OF NEGLIGENCE AGAINST DEFENDANTS

74.    Plaintiff incorporates by reference those allegations set forth in the preceding paragraphs as if same were more fully set forth herein.

75.    It is believed and therefore averred that the foregoing injuries and damages were caused directly by the negligence of Defendants, and/or each of them, and by and through the negligence of their agents, servants, and/or employees, all of whose conduct deviated from applicable standards of care and regulatory requirements.

76.    It is believed and therefore averred that the negligence of Golden Living Center— Stroud and/or The Meadows at Stroud consisted of the following:

  a.    Failure to adequately observe, assist, and intervene in Miller's care needs so as to reduce the risk or prevent her from developing pressure ulcers, open wounds, and resulting fungal infection; and

  b.    Failing to initiate, develop, update, amend, correct, and develop appropriate plans of care responsive to Miller's changing needs when said Defendant knew or should have known that existing plans of care were inadequate to prevent harm from befalling her; and

  c.    Failing to provide Miller adequate assistance to reduce or eliminate the risk to her of developing pressure ulcers and open wounds and/or advancing to open wounds; and

d. Inadequately and unsafely transferring, moving, situating, or assisting Miller such that she suffered the pressure ulcers and open wounds set forth herein or the risk thereof was increased; and

e. Failing to hire and employ adequate numbers of properly trained care staff resulting in Miller suffering traumatic injuries; and

f. Failing to properly and consistently train, retrain, guide and discipline Defendant's employees such that their errors were repeated, substandard treatment persisted, and poorly trained or incompetent employees were continuously exposed to and cared for fragile elderly with specific and mandatory custodial care needs for their health and safety; and

g. Failing to discharge employees who repeatedly violated plans of care, applicable regulations and standards of care and were, thus, a danger to facility residents; and

h. Failing to properly document discipline, plans of correction for employees who did not provide care in accordance with accepted standards, regulations and facility policies and the implementation process of discipline and correction of said employees; and

i. Failure by and through the actions of its agents, servants, and employees to establish, communicate, effect, monitor, and enforce rules, protocols, and procedures so as to provide Miller medical and custodial care within accepted standards of practice and pursuant to applicable federal and state rules and regulations so as to reduce or eliminate the risk that Miller would receive the substandard care as set forth herein; and

j. The failure to prevent her pressure ulcers and resulting infection, was a consequence of Defendant minimizing expenditures to maximize facility profits which, in turn, were a direct cause of the short staffing, poor training, failure to comply with Plans of Correction, lack of staff to provide care, and lack of supervisory staff needed to ensure that policies, procedures and standards of care were being implemented; and

k. Such other acts of negligence that may be uncovered during the course of discovery.

## FURTHER CONDUCT OF FACILITY DEFENDANTS

77.    The foregoing damages, harm, and suffering sustained by Miller were the direct,

inevitable, and inexorable result of the deficient, substandard and inadequate care

knowingly, recklessly, callously, and intentionally provided to her by Defendants, and/or

each them, which was motivated, directed, and executed for the corporate and business purpose of harvesting profits from the facility operations.

78.     In order to generate such payments, Defendants, and/or each them, intentionally provided substandard and dangerous care to Miller and the other facility residents in reckless disregard of her safety and knowing that harm to her was inevitable as evidenced by:

   a.   Defendants' willful failures to remedy longstanding problems at the facility as shown by substandard and below average care quality and quality indicators as aforesaid; and

   b.   Intentionally, knowingly, willfully, and in disregard of the safety of facility residents withdrawing excessive and unwarranted financial resources from Golden Living Center-- Stroud and/or The Meadows at Stroud to their financial benefit through home office charges, related entity transactions, payments of profits, and other financial manipulations to the detriment of facility residents; and

   c.   Knowingly, willfully and intentionally failing to hire, retain, and employ adequate numbers of staff to provide the care to facility residents required by them.

79.     By virtue of the foregoing averments and the factual allegations set forth in the remainder of this Complaint, Defendants, and/or each them, have shown a callous, willful, and deliberate pattern of substandard care motivated by the desire for financial gain to the knowing detriment of the health, safety, and welfare of the weak, old, and ill residents residing in their buildings and such conduct caused the harm to Miller.

80.     Defendants, by their conduct, established that their sole motivation was to obtain profits from the care of the weak and sick elderly to the knowing and willful detriment of such persons.

81.     Accordingly, Defendants' actions, if so proven, are sufficient for the imposition of punitive damages upon them.

## COUNT I - WRONGFUL DEATH

**Terri Allfrey, Individually and as Administratrix of the Estate of Mary Ann Miller, Deceased**
**v.**
**GGNSC East Stroudsburg LP, Directly and/or t/d/b/a/**
**Golden Living Center – Stroud;  GGNSC East Stroudsburg GP LLC;**
**and Golden Gate National Senior Care LLC**
**["Golden Living Defendants"]**

82.    Plaintiff hereby incorporates by reference the averments of the preceding paragraphs, as if the same were set forth fully at length herein.

83.    Plaintiff brings this action on behalf of all those entitled by law to recover all damages for wrongful death, pursuant to and in accordance with 42 Pa. CSA §8301, Pa. R.C.P. 2202(a), and all other applicable laws.

84.    Neither Decedent nor anyone on her behalf has previously brought an action against Defendants for personal injuries and no other action for the death of Decedent has been commenced.

85.    As a direct and proximate result of the aforementioned careless, reckless and negligent conduct, Defendants are liable for all damages recoverable for wrongful death.

86.    By reason of the death of the Decedent, Plaintiff has suffered financial losses and other expenses of the administration of the estate.

87.    Plaintiff and Decedent's other statutory survivors have further suffered the loss of the Decedent's society and comfort, friendship, guidance, companionship, care, assistance, attention, protection, advice, instruction, training, education, love and affection, and other damages as are recoverable under the Wrongful Death Act of Pennsylvania, including but not limited to, consortium damages.

88.     Plaintiff brings this action under and by virtue of the Wrongful Death Act, 42 Pa.

C.S.A. §8301 and Pa. R.C.P. 2202(a).  Plaintiff is entitled to recover, in addition to other

damages, amounts for reasonable hospital, nursing, medical and funeral expenses, and

expenses of the administration necessitated by reason of the negligent reckless, and

careless conduct and omission to act causing death, harm and/or increased risk of

harm.

89.     As a direct and proximate result of the conduct set forth herein, Plaintiff has

suffered as follows:

     a.  Decedent, mother of the Plaintiff, has died (aged 79 years);

     b.  Plaintiff has suffered financial loss and has incurred general expenses, funeral expense and bills;

     c.  Plaintiff and Decedent's other statutory survivors lost the services, society, love, affection and attention of their mother;

     d.  Plaintiff and Decedent's other statutory survivors have lost the Decedent's companionship, guidance, nurture and tutelage;

     e.  Plaintiff and Decedent's other statutory survivors lost such other valuables and sustained such other damages as are appropriately allowed by Pennsylvania law under the wrongful death statute.

     WHEREFORE, Terri Allfrey individually and as Administratrix of the Estate of

Mary Ann Miller, deceased, demands judgment against Defendants in an amount in

excess of the applicable arbitration limit, exclusive of interest, together with delay

damages and costs.

## COUNT II - SURVIVAL ACTION

**Terri Allfrey, Individually and as Administratrix of the Estate of Mary Ann Miller, Deceased**
**v.**
**GGNSC East Stroudsburg LP, Directly and/or t/d/b/a/**
**Golden Living Center – Stroud;  GGNSC East Stroudsburg GP LLC;**
**and Golden Gate National Senior Care LLC**
**["Golden Living Defendants"]**

90.     Plaintiff hereby incorporates by reference the averments of the preceding paragraphs, as if the same were set forth fully at length herein.

91.     Plaintiff, as Administratrix of the Estate of Mary Ann Miller, deceased, brings this survival action on behalf of the Estate, and all those entitled by law to recover all damages pursuant to and in accordance with 20 Pa.C.S.  §3373, 42 Pa. CSA §8302 and all other applicable laws to recover all damages recoverable in a survival action.

92.     Neither Decedent nor anyone on her behalf has previously brought an action for personal injuries and no other action resulting from the death of Decedent has ever been commenced.

93.     Plaintiff brings this action on behalf of the Estate of Mary Ann Miller under and by virtue of the Act of June 30, 1972, P.L. 500, No. 164, 2, effective July 1, 1972, 20 CPSA §3373.

94.     Plaintiff claims on behalf of said estate damages suffered by reason of the death of the Decedent, Decedent's loss of retirement and social security income, Decedent's other financial losses suffered as a result of his death, as well as the pain and suffering of Decedent prior to her death.

        WHEREFORE, Terri Allfrey, individually and as Administratrix of the Estate of Mary Ann Miller, deceased, demands judgment against Defendants in an amount in

excess of the applicable arbitration limit, exclusive of interest, together with delay

damages and costs.

## COUNT III - WRONGFUL DEATH

**Terri Allfrey, Individually and as Administratrix of the Estate of Mary Ann Miller, Deceased**
**v.**
**The Meadows at Stroud for Nursing and Rehabilitation LLC** *(formerly known as "Golden Living Center – Stroud")* **and**
**Priority Healthcare Group LLC**

**["Meadows" Defendants]**

95.     Plaintiff hereby incorporates by reference the averments of the preceding

paragraphs, as if the same were set forth fully at length herein.

96.     Plaintiff brings this action on behalf of all those entitled by law to recover all

damages for wrongful death, pursuant to and in accordance with 42 Pa. CSA §8301,

Pa. R.C.P. 2202(a), and all other applicable laws.

97.     Neither Decedent nor anyone on her behalf has previously brought an action

against Defendant for personal injuries and no other action for the death of Decedent

has been commenced.

98.     As a direct and proximate result of the aforementioned careless, reckless and

negligent conduct, Defendants are liable for all damages recoverable for wrongful

death.

99.     By reason of the death of the Decedent, Plaintiff has suffered financial losses

and other expenses of the administration of the estate.

100.   Plaintiff and Decedent's other statutory survivors have further suffered the loss of

the Decedent's society and comfort, friendship, guidance, companionship, care,

assistance, attention, protection, advice, instruction, training, education, love and

affection, and other damages as are recoverable under the Wrongful Death Act of Pennsylvania, including but not limited to, consortium damages.

101.    Plaintiff brings this action under and by virtue of the Wrongful Death Act, 42 Pa. C.S.A. §8301 and Pa. R.C.P. 2202(a).  Plaintiff is entitled to recover, in addition to other damages, amounts for reasonable hospital, nursing, medical and funeral expenses, and expenses of the administration necessitated by reason of the negligent, reckless and careless conduct and omission to act causing death, harm and/or increased risk of harm.

102.    As a direct and proximate result of the conduct set forth herein, Plaintiff has suffered as follows:

      a.  Decedent, mother of the Plaintiff, has died (aged 79 years);

      b.  Plaintiff has suffered financial loss and has incurred general expenses, funeral expense and bills;

      c.  Plaintiff and Decedent's other statutory survivors lost the services, society, love, affection and attention of their mother;

      d.  Plaintiff and Decedent's other statutory survivors have lost the Decedent's companionship, guidance, nurture and tutelage;

      e.  Plaintiff and Decedent's other statutory survivors lost such other valuables and sustained such other damages as are appropriately allowed by Pennsylvania law under the wrongful death statute.

WHEREFORE, Terri Allfrey individually and as Administratrix of the Estate of Mary Ann Miller, deceased, demands judgment against Defendants in an amount in excess of the applicable arbitration limit, exclusive of interest, together with delay damages and costs.

## COUNT IV - SURVIVAL ACTION

**Terri Allfrey, Individually and as Administratrix of the Estate of Mary Ann Miller, Deceased**
**v.**
**The Meadows at Stroud for Nursing and Rehabilitation LLC** *(formerly known as "Golden Living Center – Stroud")* **and**
**Priority Healthcare Group LLC**

## ["Meadows" Defendants]

103.   Plaintiff hereby incorporates by reference the averments of the preceding paragraphs, as if the same were set forth fully at length herein.

104.   Plaintiff, as Administratrix of the Estate of Mary Ann Miller, deceased, brings this survival action on behalf of the Estate, and all those entitled by law to recover all damages pursuant to and in accordance with 20 Pa.C.S.  §3373, 42 Pa. CSA §8302 and all other applicable laws to recover all damages recoverable in a survival action.

105.   Neither Decedent nor anyone on her behalf has previously brought an action for personal injuries and no other action resulting from the death of Decedent has ever been commenced.

106.   Plaintiff brings this action on behalf of the Estate of Mary Ann Miller under and by virtue of the Act of June 30, 1972, P.L. 500, No. 164, 2, effective July 1, 1972, 20 CPSA §3373.

107.   Plaintiff claims on behalf of said estate damages suffered by reason of the death of the Decedent, Decedent's loss of retirement and social security income, Decedent's other financial losses suffered as a result of his death, as well as the pain and suffering of Decedent prior to her death.

WHEREFORE, Terri Allfrey, individually and as Administratrix of the Estate of Mary Ann Miller, deceased, demands judgment against Defendants in an amount in

excess of the applicable arbitration limit, exclusive of interest, together with delay damages and costs.

Respectfully Submitted,

THE FOLEY LAW FIRM


_____/s/Kevin P. Foley_____
Kevin P. Foley, Esquire
ID #: 53067
538 Spruce St. Ste 200 – P.O. Box 1108
Scranton, PA 18501-1108
570-342-8194

## VERIFICATION

I, Terri L. Allfrey, Administratrix of the Estate of Mary Ann Miller HEREBY VERIFY that I have read the foregoing Complaint and that insofar as it is based upon information within my own knowledge, it is true and correct and insofar as it is based upon the expertise of counsel, we have relied upon counsel in making this Verification. The language of the pleading is that of counsel and not my own. I understand that this Verification is made subject to the provisions of 18 Pa. C.S. ' 4904 pertaining to Unsworn Falsification to Authorities.

Terri L. Allfrey