# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRI ALLFREY, Individually and as Administratrix of the Estate of Mary Ann Miller, Deceased,<br><br>                Plaintiff,<br>   v.<br><br>GGNSC EAST STROUDSBURG LP, et al.,<br><br>                Defendants. | NO. 3:17 CV 02200<br><br>Hon. Robert D. Mariani |

## DEFENDANTS' STATEMENT OF FACTS IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants, GGNSC East Stroudsburg LP, GGNSC East Stroudsburg GP, LLC; and Golden Gate National Senior Care LLC; (hereinafter the "Defendants"), state the following for their LR 56.1 statement of facts in support of their Motion for Partial Summary Judgment:

1. This is a survival and wrongful death action in which Plaintiff claims that the decedent, Mary Ann Miller, received inadequate nursing treatment while a resident at the nursing home facility then known as Golden Living – Stroud, from November 28, 2015 to January 13, 2016.

2. Plaintiff seeks both compensatory and punitive damages. See Dkt. 1, Par. 81.

3. Ms. Miller presented at the Golden Living – Stroud facility on November 28, 2015 from Pocono Medical Center, where she received surgical treatment for a hip fracture after falling at her son's home. See Ex. A, Report of Harold Brem, MD, FACS.[1]

4. Ms. Miller presented to Golden Living – Stroud with co-morbidities including a history of stroke, coronary artery disease, hypertension, diabetes, elevated cholesterol, reflux, obesity, and a sacral ulcer developed at Pocono Medical Center. Id., Par. 7.

5. Ms. Miller resided at Golden Living – Stroud until January 13, 2016, when she returned to Pocono Medical Center. She died in the hospital on February 12, 2016 at the age of 79. Id., Pars. 1, 7.

6. Dr. Brem acknowledges that Ms. Miller presented to Golden Living – Stroud from Pocono Medical Center with a sacral ulcer that he categorized as "unavoidable," though he characterized its progression as avoidable. Id., Par. 9(c).

7. On his review of the record, Dr. Brem claims at various points in his report that Golden Living – Stroud "did not meet nor provide the standard of care" as to Ms. Miller, that it "breached" and "grossly breached" the standard of care in failing to avoid the progression of Ms. Miller's wound. Id., Pars. 8, 9

---

[1] Dr. Brem is Plaintiff's proffered expert witness.

8.	The record and Dr. Brem's report do not demonstrate that the actions of the Defendants rise to the level of malicious, willful, or wanton conduct necessary for punitive damages.

WHEREFORE, the Defendants respectfully request that the Court dismiss Plaintiff's claim for punitive damages.

                          Respectfully submitted,

                          FOX ROTHSCHILD LLP

                          /s/ Eric E. Reed
                          Jacqueline M. Carolan, Esquire
                          Eric E. Reed, Esquire
                          2000 Market Street, 20th Floor
                          Philadelphia, PA  19103
                          (215) 299-2741
                          *Attorneys for Defendants,*
                          *GGNSC East Stroudsburg LP, GGNSC East Stroudsburg GP, LLC , and Golden Gate National Senior Care LLC*

Dated:  December 9, 2019

# **Exhibit A**

Harold Brem, MD FACS

3611 Henry Hudson Parkway

Apt 5F

Bronx, NY 10463

Cell: 917-992-4017

Kevin Foley, Esq.

Foley Law Firm

538 Spruce Street, Suite 200

Post Office Box 1108

Scranton, Pennsylvania 18501-1108

(570) 342-8194

April 1st, 2019

RE: *Allfrey (Mary Ann Miller) Vs. GGNSC East Stroudsburgh LP*

1. I was asked by Attorney Kevin Foley to review the medical course of Maryann Miller from November 2015 through until her death on February 12th, 2016. This report summarizes my opinions on this matter, my qualifications to render those opinions, and the information I considered in forming my opinions.

2. My address:
   Harold Brem, M.D., FACS
   3611 Henry Hudson Parkway
   Apartment 5F
   Bronx, NY 10463

3. Attached is a copy of my *Curriculum Vitae*. I am board certified in general surgery. I am licensed to practice medicine in New York and New Jersey.

4. I have reviewed Ms. Miller's relevant medical records. I base my conclusions in this case on my education, training and experience, knowledge of the relevant medical literature, and the information reviewed in this matter.

5. Qualifications
   I have been in academics my entire career in the same role: leading a wound program. I have reached the rank of Professor of Surgery based on my publications in the field of wound healing. My particular area of expertise is in treatment of chronic wounds, limb salvage and

understanding and treating wounds in patients with decubiti ulcers. Over the last 21 years I have had the same job, I have been Director of a Wound Center.

I am currently the Chief, Division of Wound Healing & Regenerative Medicine at Newark Beth Israel Hospital. I am board certified in general surgery. A detailed statement of my professional experience, educational background and professional accomplishments is included in my curriculum vitae.

I have an active clinical practice which includes, but is not limited to, providing care and treatment as well as supervising, educating, instructing, interacting with, and working alongside hospital staff such as surgery residents, medical students, registered nurses, and plastic and vascular surgeons. I am familiar with the standard of care applicable to both physicians and nursing staff at a wound centers, nursing homes, subacute care facilities, community hospitals and academic health care centers. I am familiar with the standard of care applicable to both physicians and nursing staff at the Golden Living Center and conduct that conforms to and deviates from the standard of care in 2015 and 2016. Through my review and report, I will address matters pertinent to standard of care, causation, and damages.

6. I have reviewed the following documents:
   1. Golden Living Center Medical Records
   2. Pocono Medical Center Medical Records
   3. Monmouth Cardiology Associates Records
   4. Dr. David Scarf report dated 2-15-16
   5. Area Agency on Ageing and Pennsylvania Department of Health Inspections
   6. Autopsy Report

7. Brief History:
   Ms. Miller was a 79-year-old female admitted to Pocono Medical Center on November 22nd, 2015 with a fracture of her hip. She had a history of stroke, coronary artery disease, hypertension, diabetes, elevated cholesterol, reflux and obesity. After surgical repair of her fracture, she was transported to Golden Living Center on November 28th, 2015. There, she developed a worsening wound on her sacrum and new wounds on her heels. On January 13th, Ms. Miller was transferred back to Pocono Medical Center for becoming unresponsive. At the time of arrival, one of the Emergency Room nurses called the authorities due to the condition of Ms. Miller and how bad the ulcers were.

8. I opine that the Golden Living Center and its staff grossly breached the standard of care when they failed to have adequate procedures in place to prevent the development and progression of pressure ulcer injuries in patients such as Ms. Miller. Based upon her condition and history, Golden Living Center failed to properly implement procedures, to evaluate, and to treat to ensure the integrity of Ms. Miller's integumentary system, to prevent new pressure ulcer formation, and to prevent worsening of her wounds.

9. <u>My opinions:</u>
   a. At the time of Mr. Miller's fracture, it was exceptionally clear that she was at high risk for developing a decubitus ulcer. Her well-known comorbidities included coronary artery disease with a decreased ejection fraction, obesity, history of stroke, type 2 diabetes and recent hip fracture. Golden Living Center should have used every standard measure to both help prevent and treat decubitus ulcers. They failed to do this.

b. Proper precautions would have included monitoring her, turning, optimal mattress, immediate care upon recognition of her ulcers including aggressive treatment by both the nursing team and physicians, and transfer to a higher level of care with any evidence on serial examinations of worsening. Had the Golden Living staff (including nursing and MD Dr. Giriwarlal Gupta) done this, they would have certainly prevented progression.

c. Ms. Miller's sacral ulcer falls into the category of unavoidable, but progression of the sacral decubitus ulcer and her death was certainly avoidable, as was the onset of her heel ulcers. In this, the care at Golden Living Center was substantially below the standard of care. To be clear, Golden Living Center did meet not nor provide the standard of care.

d. There was systemic neglect to the ulcers allowing new heel ulcers to form while the sacral ulcer continued to progress.

e. Despite entering Golden Living Center with a stage 2, 4.0 by 0.5 by 0.5 cm pressure ulcer, minimal to no care was provided early on. Later, intermittent or no skin care was provided when twice daily care was required. By re-admission to Pocono Medical Center on January 13th, 2016, the sacral was massive and to the bone. Both of Ms. Miller's heels had deep tissue injuries.

f. A proper mattress was not utilized.

g. The nursing team failed to elevate the risk level of these ulcers.

h. Golden Living Center provided wound care that was grossly substandard and did not utilize effective or timely wound modalities.

i. Golden Living Center employees breached the standard of care when they failed to properly recognize Ms. Miller's risk of further skin breakdown.

j. The nursing staff at Golden Living Center failed to properly document Ms. Miller's's turning and/or repositioning, and they failed to properly and timely turn and/or reposition Ms. Miller. The failure of the defendants' nursing staff to properly and timely turn Ms. Miller, and the failure to accurately document these events, were deviations from the standard of care that proximately caused injury to Ms. Miller.
Ms. Miller was bedbound for the entire duration of her stay at Golden Living Center. The Defendants' nursing staff should have been turning Ms. Miller at least every two hours while she was in bed – i.e., a minimum of twelve (12) times per day. The progression of the sacral ulcer, new onset of bilateral heel ulcers and the lack of documentation is reflective of and attributable to the nursing staff's failure to comply with the standard of care and turn and/or reposition Ms. Miller at least every two (2) hours.

k. My opinion is that the failure to properly turn and reposition Ms. Miller proximately caused the progression of Ms. Miller's pressure ulcers. Ms. Miller presented to the nursing staff as a post hip fracture patient, with an underlying diagnosis of diabetes, who had poor bed mobility. I opine that continuous pressure exerted on her skin caused Ms. Miller's multiple decubiti ulcers to progress. The defendants' nursing staff compounded Ms. Miller's injuries by failing to properly and timely turn Ms. Miller.

l. On January 8th 2016, she had a documented foul odor from the ulcer. Within the standard care, further intervention was required at that time. She was not sent to Pocono Medical Center until five days later reflecting a lack of proper knowledge to care for these ulcers.

m. Nurses note from Margo Magda, RNAC MDS Coordinator did not report in her Jan 11th note that the patient had any worsening in pressure ulcer status.

n. I note that the records from Golden Living document that they were providing skin care related measures January 13th through January 16th when they clearly were not. Ms. Miller had been transferred out to Pocono Medical Center on January 13. This makes any skin care related records highly suspect.
o. Maryann's son was told she had pneumonia causing the sepsis, when in fact it was the ulcer causing it. This was either a profound lack of knowledge by the Golden Medical Center team or lack of integrity when communicating to the family.
p. My opinion is that that there was a systematic breakdown of care. The physicians and nurses clearly did not coordinate wound care.
q. My opinion is that the deviation from the standard of care in failing to timely and properly implement established monitoring and treatment measures was a gross breach and led to escalation and/or exacerbation of Ms. Miller's sacral ulcer. The proper steps which should have been taken included, but were not limited to, proper topical treatment of her sacral ulcer, proper exams and using appropriate topical therapy
r. The pressure ulcers caused Ms. Miller horrendous pain and suffering.
s. The pressure ulcers were a direct cause of her death.
t. Her death certificate February 12, 2016 stated that she died in part of pressure ulcers. I believe her decubiti were the primary cause of her death.
u. But for the gross breach the standard of care by the Golden Living Center and its staff Ms. Miller would not have suffered as badly as she had, or died when she did.

10. My Opinions in this report have been done so with a reasonable degree of medical certainty. I reserve the right to supplement this report should additional information become available.

*Harold Brem*

Harold Brem MD, FACS

## **CERTIFICATE OF SERVICE**

I certify that, on December 9, 2019, I filed a copy of the foregoing with the Court using the ECF system, which will cause notice and a copy to issue to counsel of record.

/s/ Eric E. Reed